1
2
3
4
5
6
7
8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 UNITED STATES OF AMERICA,                    CASE NO. 13-CR-0003 AWI BAM

12                    Plaintiff,               **ORDER ON DEFENDANT'S MOTION**
                                               **FOR STAY OF FORCED TAKING**
13        vs.                                  **OF A DNA SAMPLE**

14 CHRISTOPHER DAVID
   ROBINETTE,
15
                     Defendant.
16 _____/

17        Defendant Christopher David Robinette moves to stay the forced taking of a DNA sample

18 authorized by 42 U.S.C. § 14135a.  Robinette argues that requiring defendant, an arrestee, to submit

19 to a buccal swab violates his Fourth Amendment rights against unreasonable search and seizure.

20        The buccal swab from defendant was requested as part of the normal U.S. Marshal booking

21 procedures.  Defendant Robinette was arrested on a criminal complaint charging violation of 18

22 U.S.C. §2251(a), Sexual Exploitation of Children, and 18 U.S.C. §2423(a), Transportation with

23 Intent to Engage in Criminal Sexual Activity.  Upon booking, defendant objected to the collection of

24 the DNA sample as violative of his Fourth Amendment rights.  At arraignment on the complaint on

25 December 26, 2012, defendant raised the objection, and the court set a briefing schedule on the

26 objection.  The court stayed the taking of the sample pending the hearing.  On January 8, 2013,

27 defendant filed a formal motion for a stay of the forced DNS sample pending the Supreme Court's

28 decision in *Maryland v. King*.  On January 9, 2013, the government filed an opposition to the stay.

1

An indictment issued on January 3, 2013 by the grand jury upon probable cause to believe that defendant had committed the felony offenses for which he has been charged. Defendant was arraigned on the indictment on January 11, 2013. Also on January 11, 2013, the Court heard oral argument on defendant's motion to stay. The government appeared by Assistant United States Attorney David Gappa. Defendant was present and appeared by retained counsel John Balazs.

**DNA Statute**

In 1994, Congress passed the Violent Crime Control and Law Enforcement Act ("Crime Control Act"), Pub.L. No. 103–322, 108 Stat. 1796 (codified as amended at 42 U.S.C. §§ 13701–14223), which authorized the Federal Bureau of Investigation ("FBI") to establish an index of DNA samples. Pursuant to this authority, the FBI created the Combined DNA Index System ("CODIS"), which allows State, local and federal "forensics laboratories to exchange and compare DNA profiles electronically in an attempt to link evidence from crime scenes for which there are no suspects to DNA samples of convicted offenders on file in the system."[1] H.R. Rep. 106–900(I), at 8 (2000), reprinted in 2000 U.S.C.C.A.N. 2323, 2324.

In 2000, Congress enacted the DNA Analysis Backlog Elimination Act (the "DNA Act" or the "Act"), which required DNA samples to be collected from individuals in custody and those on probation, parole, or supervised release after being convicted of "qualifying Federal offenses." 42 U.S.C. § 14135a. Congress passed the Justice for All Act in 2004, which further amended the DNA Act. Pub.L. No. 108-405, § 203(b), 118 Stat. 2260, 2270 (2004).

Thereafter, Congress amended the DNA Act in 2006, which required the collection of a DNA sample "from individuals who are arrested, facing charges, or convicted." Pub.L. 109-248, § 155, (codified as amended at 42 U.S.C. § 14135a(a)(1)(A) & (2) (collection from federal offenders) and its implementing regulation, 28 C.F.R. § 28.12. ). Pursuant to the DNA Act, "[t]he Attorney General, the Director of the Bureau of Prisons, or the probation office responsible ... may use or authorize the use of such means as are reasonably necessary to detain, restrain, and collect a DNA

---

[1] CODIS contains over ten million DNA profiles and allows for a centralized repository for uploaded samples and integrated searches for genetic matches. See CODIS-NDIS Statistics, Fed. Bureau Investigation, http://www.fbi.gov/about-us/lab/codis/ndis-statistics (last visited January 16, 2013).

sample from an individual who refuses to cooperate in the collection of the sample." 42 U.S.C. § 14135a(a)(4)(A); 28 C.F.R. §28.12(d). Moreover, "[a]n individual from whom the collection of a DNA sample is authorized under this subsection who fails to cooperate in the collection of that sample shall be ... guilty of a class A misdemeanor." *Id.* § 14135a(a)(5)(A). Once the DNA sample is collected, the collection kit is forwarded to the FBI for analysis and inclusion in CODIS. *Id.* § 14135a(b). Qualifying federal offenses are any felony, any offense under chapter 109A of Title 18, and a crime of violence. 42 U.S.C. §14135a(d).

Defendant Robinette is a federal arrestee who is charged with a felony, an offense under Chapter 109A of Title 18 and a crime of violence. Thus, the crimes alleged against defendant are qualifying federal offenses. Robinette, therefore, qualifies under the DNA Act to be required to give a DNA sample.

### The Swab is a Search under the Fourth Amendment

The Fourth Amendment addresses "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967).

Intrusions into the human body are searches subject to the restrictions of the Fourth Amendment. *U.S. v. Wright*, 215 F.3d 1020, 1025 (9th Cir.) (the taking of blood), *cert. denied*, *Wright v. U.S.*, 531 U.S. 969 (2000). Collection of a DNA sample constitutes an invasion of privacy that is subject to the strictures of the Fourth Amendment. *U.S. v. Mitchell*, 652 F.3d 387, 406 (3d Cir. 2011), *cert. denied*, 132 S.Ct 1741 (2012). For instance, subjecting a person to a breathalyzer test, which generally requires the production of alveolar or deep lung breath for chemical analysis, implicates similar concerns about bodily integrity and, like the blood-alcohol test the Supreme Court considered in *Schmerber*, is also a search. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402 (1989), citing *Schmerber v. California*, 384 U.S. 757, 771–72, 86 S.Ct. 1826 (1966) (A forced blood draw can violate a person's Fourth Amendment rights if it was unreasonable under the circumstances). The Ninth Circuit has held that a buccal swab is a search. "There is no question that the buccal swab constituted a search under the Fourth Amendment."

3

*Friedman v. Boucher*, 580 F.3d 847, 852 (9th Cir. 2009). Thus, the DNA testing in this case implicates Fourth Amendment rights.

### Third Circuit's Ruling that the DNA Act is Constitutional

Neither the Ninth Circuit nor the Supreme Court has yet to rule that the DNA Act is unconstitutional on a set of facts similar to those before the Court. In *U.S. v. Kriesel*, 508 F.3d 941, 948 -949 (9th Cir. 2007), the court held that the 2004 amendment to the DNA Act is constitutional as to supervised releasees because the government's significant interests in identifying supervised releasees, preventing recidivism, and solving past crimes outweigh the diminished privacy interests that may be advanced by a convicted felon. *Kriesel*, 508 F.3d at 950. The court cautioned, however that: "We emphasize that our ruling today does not cover DNA collection from arrestees or non-citizens detained in the custody of the United States, who are required to submit to DNA collection by the 2006 version of the DNA Act." *U.S. v. Kriesel*, 508 F.3d at 948 -949 (requiring supervised release of felon to provide DNA sample).

The Third Circuit, in *United States v. Mitchell*, 652 F.3d 387 (3rd Cir.2011), *cert. denied,* – U.S. —, 132 S.Ct. 1741, 182 L.Ed.2d 558 (2012), held that the federal DNA Act is constitutional as against a facial and as applied challenge on facts similar to those before this court. In *Mitchell*, the Defendant was arrested, placed in pretrial detention, and was detained at the time that the DNA sample was sought to be collected. (The case does not identify the type of DNA testing). Defendant had been charged with intent to distribute a mixture and substance containing a detectable amount of cocaine. Defendant objected to the DNA sampling. The United States District Court, 681 F.Supp.2d 597, decided in favor of the defendant, and the Government appealed.

The Third Circuit held that the DNA Act, permitting the suspicionless collection of DNA samples from arrestees, did not violate the Fourth Amendment applying a "totality of the circumstances" test. The court upheld the collection of DNA under § 14135a against what the court categorized as two separate "searches." The first search is the physical collection of the DNA sample. The Court held, based upon Supreme Court authority, that collecting DNA is a minimal intrusion. *Id.* at 407, citing *Schmerber v. California*, 384 U.S. 757, 771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (venipuncture, in which blood is drawn from the arm). The Court noted that "DNA

4

samples may also be collected by swabbing the inside of the mouth (a "buccal swab"). This method

is likewise less invasive than venipuncture." 652 F.3d at 408. The court stated that "act of

collecting a DNA sample is 'neither a significant nor an unusual intrusion.'" *Id.*

The second search the Court considered against Fourth Amendment standards was the use of

the DNA sample; running an arrestee's DNA profile through CODIS to reveal matches to

crime-scene samples from unsolved cases. The court noted that this search could invade a detainee's

privacy. The court, however, held that the government's interests in identifying arrestees and solving

crimes outweighs an arrestee's diminished expectations of privacy. The court held that DNA

profiling is simply a more precise method of ascertaining identity and is thus akin to fingerprinting,

which has long been accepted as part of routine booking procedures.[2] Fingerprinting has been

consistently upheld as constitutional. *See Hayes v. Florida*, 470 U.S. 811, 813–18, 105 S.Ct. 1643

(1985).[3] After analogizing the DNA profile to traditional fingerprinting, the *Mitchell* court stated

that, "[g]iven the record in front of us today, we conclude that a DNA profile is used solely as an

accurate, unique, identifying marker—in other words, as fingerprints for the twenty-first century."

*Mitchell*, 652 F.3d at 410. The court also found that the DNA sampling promotes legitimate

governmental interests of accurately identifying arrestees which were not equally well served by

collecting DNA samples post-conviction and did not violate the Fourth Amendment, given the

protections built into the Act and the government's stated practice of only analyzing "junk DNA."[4]

The court ultimately held "in the totality of the circumstances," given arrestees' and pretrial

detainees' diminished expectations of privacy in their identities and the Government's legitimate

---

[2] The court acknowledged that identity evidence has the purpose of both verification of the individual detained and an investigative function. *See also* W. Logan, 92 B.U. L.Rev. 1561, *Policing Identity* (Oct. 2012), arguing that jurisprudence has not kept pace with evolving technologies and has not imposed a meaningful limit on identity evidence. In particular, the author argues that the *Mitchell* court uncritically accepted the constitutionality of unfettered collection, storage, and use of arrestee identity data.

[3] Upholding fingerprinting for more than identification: *Napolitano v. United States*, 340 F.2d 313, 314 (1st Cir.1965) (expert used fingerprints taken during routine booking to match prints to evidence). See *Garcia-Torres v. State*, 949 N.E.2d 1229 n.7 (Ind. 2011) (discussing advances in fingerprinting which link fingerprints to criminality, disease, and race).

[4] Junk DNA-"non-genic stretches of DNA not presently recognized as being responsible for trait coding." *U.S. v. Kriesel*, 508 F.3d 941, 948 (9th Cir. 2007).

interests in the collection of DNA from these individuals, the collection was reasonable and did not violate the Fourth Amendment. The court, therefore, concluded that the statute was constitutional, both against the facial challenge and as against the as applied challenge. *Mitchell*, 652 F.3d at 415.

Statutes are presumed to be constitutional until judicially declared otherwise. *See Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality."); *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (in an equal protection context). Statutes are presumed constitutional. *See SeaRiver Maritime Financial Holdings, Inc. v. Mineta*, 309 F.3d 662 (9th Cir. 2002). Thus, absent a ruling that the DNA Act is unconstitutional, it is presumed constitutional.

## No Controlling Ninth Circuit Authority

Currently, no controlling Ninth Circuit authority exists on the constitutionality of buccal swabs for arrestees. The Third Circuit's opinion in *Mitchell* is persuasive authority in this Circuit. In the Ninth Circuit, the decisions of state courts, other circuits, and district courts are not binding precedent. *See Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004). Rather, only those decisions established by the Supreme Court or the Ninth Circuit are binding. *Id.*; *see U.S. v. Demasi*, 2013 WL 24818 (W.D. Pa 2013) (holding that DNA sampling of arrestee does not violate the Fourth Amendment and bound by controlling Third Circuit precedent in *United States v. Mitchell*, 652 F.3d 387 (3rd Cir. 2011).)[5]

The only Ninth Circuit authority, *Haskell v. Harris*, 669 F.3d 1049 (9th Cir. 2012), which squarely addressed the issue, has been granted *en banc* review and the 2-1 opinion has been vacated.

---

[5] *See also People v. Robinson*, 47 Cal. 4th 1104, 104 Cal. Rptr. 3d 727, 224 P.3d 55 (2010) (That the gathering of deoxyribonucleic acid (DNA) information requires the drawing of blood rather than inking and rolling a person's fingerprints does not elevate the intrusion upon the defendant's Fourth Amendment interests to a level beyond minimal.), *cert. denied*, 131 S.Ct 72 (2010); In *Mario W. v. Kaipio*, 281 P.3d 476 (Ariz. 2012), the court found the seizure of a juvenile's buccal cells, did not violate the Fourth Amendment prohibition of unreasonable searches and seizures. The Supreme Court of Arizona stated intrusion on a juvenile's privacy interests in the swiping of a swap to obtain buccal cells is not significantly greater than fingerprinting, an opportunity to obtain a DNA profile for identification purposes will have been lost if a juvenile is released pending adjudication and later fails to appear for trial without previously having submitted a buccal sample, and the state has an important interest in locating an absconding juvenile and ascertaining that the person located is the one previously charged.

See 686 F.3d 1121 (9th Cir. 2012) (en banc hearing granted: "The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit.")  While not controlling, the facts of *Haskell* are instructional. In *Haskell*, felony arrestees sued to enjoin the enforcement of California's DNA and Forensic Identification Data Base Act as violative of the Fourth Amendment.  The plaintiffs were arrestees who gave buccal swabs when they were detained as arrestees.  The opinion noted that the statute does not grant carte blanche to take buccal swabs for just anyone, but only from person arrested on suspicion of having committed a felony.  A buccal swab of the arrestee's mouth is a de minimis intrusion that occurs only after a law enforcement officer determines there is probable cause to believe that the individual committed a felony. Indeed, as noted by the Ninth Circuit, arrestees are subjected to far more intrusions: "Upon arrest, individuals are often booked and placed in a jail cell pending arraignment or bail, and at that point they are typically subjected to numerous degrading physical and emotional intrusions. They may be subjected to visual body cavity searches; be monitored by guards of the opposite sex while they shower and use the toilet; be restrained and peppersprayed; have their telephone access restricted; occasionally be housed with violent detainees who leave them 'with facial injuries that require [ ] surgery,[']; and be 'in lockdown for as much as 23½ hours a day, always shackled in chains, even when taking a shower or making a phone call, and rarely being allowed to see daylight and breathe fresh air.'" *Haskell*, 669 F.3d at 1058 (citations omitted).  Employing a "totality of the circumstances analysis," the court held that the arrestee's diminished privacy interests; the de minimis nature of the physical intrusion entailed in the taking of a buccal swab; and the carefully circumscribed scope of the DNA information being extracted, among other reasons, does not constitute an unreasonable search and seizure under the Fourth Amendment, even though a warrant or reasonable suspicion is not required.  The dissent in *Haskell* noted that DNA samples are not taken from felony arrestees in order to identify the person. Rather, the dissent argued, they are taken solely for an investigative purpose, without a warrant or reasonable suspicion. The dissent would have held that the taking of DNA samples from arrestees solely for that purpose is invalid.  669 F.3d at 1066.

In *United States v. Pool*, 621 F.3d 1213 (9th Cir.2010),  *reh'g en banc granted*, 646 F.3d 659 (9th Cir.), *and vacated*, 659 F.3d 761 (9th Cir.2011), a three-judge panel, in a 2-1 opinion, upheld

the DNA Act that required DNA collection as a condition of pre-trial release. This opinion, like *Haskell,* is not controlling. Pool was charged with possession of child pornography and as a condition of pretrial release was ordered to submit to DNA sampling, but objected to the sample as a violation of his Fourth Amendment rights. *Pool*, adopting the magistrate judge's approach, applied the totality of the circumstances test and concluded that a "judicial or grand jury finding of probable cause" is a " watershed event" that tips the scales in favor of "the government's interest in definitively determining the defendant's identity," at the expense of a "defendant's privacy interest in giving a DNA sample as a condition of pre-trial release ...." *Pool*, 621 F.3d at 1219, 1226. In a concurring opinion, Judge Lucero emphasized, "that this case condones DNA testing for individuals for whom a judicial or grand jury probable cause determination has been made; it does not address such sampling from mere arrestees.... That distinction is highly significant. A judicial probable cause determination limits the opportunities for mischief inherent in a suspicionless search regime." 621 F.3d at 1231-1232. In dissent, Judge Schroeder stated that, "[i]f there was, as the majority describes, a 'watershed event' that justified what would otherwise be an unconstitutional seizure, the event was a conviction; not a post-arrest probable cause determination." *Id.* at 1236. The case was called en banc, and the panel opinion was vacated. On September 19, 2011, before an en banc panel heard argument, the appeal was dismissed as moot because the defendant had pleaded guilty. Because the panel opinion was vacated, this Court cannot rely on the decision as controlling.

In *Friedman v. Boucher*, 580 F.3d 847, 858 (9th Cir. 2009), the court held that a buccal swab of a person not suspected of a crime violates the Fourth Amendment. Friedman had completed his term of supervised release successfully and was no longer under the supervision of any authority. At the time the DNA sample was taken, Friedman was incarcerated as a pre-trial detainee pending the prosecution of an unrelated charge. The purpose of the sample was to aid in solving cold cases. Nevada did not have a DNA Act authorizing DNA sampling. The court held that, "The Nevada authorities extracted the DNA from Friedman not because they suspected he had committed a crime, nor to aid in his reintegration into society, nor as a matter of his continuing supervision. Their purpose was simply to gather human tissue for a law enforcement databank, an objective that does not cleanse an otherwise unconstitutional search." *Friedman,* however, did not apply the totality of

8

the circumstances analysis and evaluate the legitimate purpose of identification. See *Bell v. Wolfish*, 441 U.S. 520, 533, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (the presumption of innocence "has no application to the determination of the rights of a pretrial detainee during confinement before his trial has ever begun."); *United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (the Supreme Court indicated that with a person's arrest the government may have grounds to limit the arrestee's rights.) Thus, no controlling Ninth Circuit authority exists on arrestee's Fourth Amendment rights for buccal swabs as evaluated against the totality of the circumstances.

### Supreme Court's Grant of Certiorari

The Supreme Court has granted certiorari on the issue of whether police may sample suspects' DNA without a search warrant in *Maryland v. King,* 133 S.Ct. 594 (Nov. 9, 2012).

In the underlying case, *King v. State*, 425 Md. 550, 42 A.3d 548 (Md. 2012), the Maryland Court of Appeals held that a buccal swab violated an arrestee's Fourth Amendments rights. King had been arrested on charges of rape. At the jail booking facility, jail personnel used a buccal swab to collect a DNA sample. King had been arrested, but not convicted, at the time of his first compelled DNA collection. The Maryland DNA Collection Act authorized law enforcement to collect DNA from individuals who were arrested for a crime of violence. The state court held that swabbing the inside of a suspect's mouth was a search, and subject to Fourth Amendment protections. Such search was unconstitutional because an arrestee has a sufficiently weighty and reasonable expectation of privacy against warrantless, suspicionless searches that is not outweighed by the State's purported interest in assuring proper identification of him as to the crimes for which he was charged at the time. The state statute was thus was unconstitutional, under the Fourth Amendment, as applied to defendant as a mere arrestee. The court held that the State had no problem identifying accurately defendant through traditional booking routines, and solving cold cases, an impermissible search, was the only State interest served by collection of defendant's DNA.

The United States Supreme Court issued a stay of the decision, finding that certiorari would be appropriate. *Maryland v. King*, 133 S.Ct 1 (July 30, 2012). The Court granted the stay noting that the decision in *King v. State* conflicts with decisions of the U.S. Court of Appeals for the Third and Ninth Circuits which have upheld statutes similar to Maryland's DNA Collection Act. Thus, the

issue before this court is pending Supreme Court review.[6]

**Application of Facts**

There are important distinctions, as recognized by the cases, between persons who have been merely arrested and with persons who have been convicted of a crime. Defendant Robinette's case falls somewhere in between. He has been arrested, but an indictment has issued based on probable cause.

1.    **Facial Challenge and As Applied Challenge**

At oral argument, the court inquired whether Robinette challenged the DNA Act as a facial challenge or as an as applied challenge. Initially, Robinette responded that the challenge was solely as a facial challenge, but then considered that he was asking to have the DNA Act declared unconstitutional, which could impair state and federal booking procedures nation-wide, stated that he was also including an as applied challenge. As to the as applied challenge, Robinette argues that there is no need for his DNA.

2.    **Facial Challenge to the DNA Act**

The court declines to rule on the facial challenge to the DNA Act's constitutionality. Robinette has not argued in any measured way that the statute is unconstitutional. As cited above, statutes are presumed constitutional. The court will not address an issue which is not squarely presented and where no real argument has been presented. Accordingly, the court declines to decide the facial challenge. Instead, the court considers the request for a stay as an as applied challenge to the statute.

3.    **Robinette's Request**

Robinette asks this court to preserve the "status quo" pending decision of the Supreme Court in *Maryland v. King*. Robinette argues that a stay should be granted because there is a "fair prospect" that the Supreme Court will rule in the defense's favor and a "likelihood that irreparable harm will result from the denial of the stay," or alternatively, this is a close case and the balance of equities tips towards a stay. (Doc.7, p.3.) He argues that the split decisions, as discussed above,

---

[6] As conceded at oral argument, it would be pure speculation as to if and when the Supreme Court would rule.

10

show a reasonable probability of success on the merits in the Supreme Court.

Robinette also argues that he will be irreparably impaired if the DNA sample is taken. The forced taking of his DNA sample itself constitutes a Fourth Amendment violation that cannot be undone. Once the DNA sample is taken, loaded into the arrestee database and profiled, the sample is subject to repeated law enforcement searches. (Doc. 7, p.3.)

The Government argues that a stay is unwarranted because no authority precludes the taking of the DNA sample. The DNA statute authorizes the taking of the sample under the circumstances presented here. As to the pending Supreme Court's decision, the Government counters that there is not a "fair prospect" that the Supreme Court will uphold the *Maryland v. King* decision which found DNA sampling unconstitutional. The Government cites to the Supreme Court's order which noted that preventing Maryland from collecting and processing DNA would impact other states and the FBI's national DNA database. The Supreme Court's order observed: "given the considered analysis of courts on the other side of the split, there is a fair prospect that this Court will reverse the [*Maryland*] decision below." 133 S.Ct. at 3. The Government argues that it will be prejudiced by a stay by being unable to collect the sample. There are legitimate law enforcement and public safety interest in having DNA samples taken from a person such as defendant who is charged with serious crimes of violence.

4.    **Minimal Intrusion and Governmental Interest**

The Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598, 1602 (2008). In order to assess whether a search is reasonable absent individualized suspicion, the courts apply the "general Fourth Amendment approach" and examine the totality of the circumstances in objective terms "by assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 118-19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)); *see also Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) ("Reasonableness ... is measured in objective terms by examining the totality of the circumstances.").

Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884 (1979). Most courts considering the constitutionality of DNA sampling and profiling have employed the totality of the circumstances test. *See Mitchell*, 652 F.3d at 403 ("We and the majority of circuits—the First, Fourth, Fifth, Sixth, Eighth, Ninth, Eleventh, and District of Columbia—have endorsed a totality of the circumstances approach.")

  a. Intrusion on Reasonable Expectation of Privacy

  As shown by the cases above and many others, once arrested, an arrestee has a diminished right of privacy. The court, here, will not present an exhaustive analysis. These cases show a diminished expectation of privacy, at least in light of institutional security; but, as presented in this case, other valid governmental interests also are present warranting a diminished expectation of privacy. For instance, the Supreme Court has recognized that the "institutional needs and objectives" of prison facilities necessarily require, as a practical matter, the curtailment of certain rights. *Wolff v. McDonnell*, 418 U.S. 539, 555-556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("A detention facility is a unique place fraught with serious security dangers."). Recently, the Supreme Court upheld strip searches of jail detainees without any showing of probable cause or reasonable suspicion. *Florence v. Bd. of Chosen Freeholders*, – U.S.–, 132 S.Ct. 1510, 1518–23, 182 L.Ed.2d 566 (2012) (listing reasons why invasive search of detainees is warranted in today's jail security imperative environment). The paramount concern in this respect is internal jail security. *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "The fact of confinement as well as the legitimate goals and policies of the penal institution limits ... retained constitutional rights. There must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. This principle applies equally to pretrial detainees and convicted prisoners." *Bell v. Wolfish*, 441 U.S. at 546, 99 S.Ct. 1861 (emphasis added). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

The swab at issue in this case does not involve invasive intrusions into bodily functions. It involves a wipe of the inside of a person's cheek with soft material. The swab is non-intrusive. See CODIS-NDIS, Fed. Bureau Investigation, http://www.fbi.gov/about-us/lab/biometric-analysis/dna-nuclear/fco-buccal-kit (last visited January 16, 2013); *States v. Amerson*, 483 F.3d 73, 84, fn. 11 (2d Cir.2007) ("If ... the DNA were to be collected by cheek swab, there would be a lesser invasion of privacy [than a blood draw] because a cheek swab can be taken in seconds without any discomfort."), *cert. denied,* 552 U.S. 1042 (2007); *Bull v. City and County of San Francisco,* 595 F.3d 964, 992-993 (9th Cir. 2010) ("Not all searches are created equal. The Fourth Amendment differentiates between more and less intrusive searches, and requires varying levels of need to justify different kinds of searches.") Indeed, defendant Robinette does not object to the swab based on its level of intrusiveness.

      b.     Compelling State Interest during Detention

Robinette argues that Government does not need his DNA sample at this time and could delay taking the sample.

The swab serves an important state interest of identification of the arrestee. Once an individual is lawfully arrested based upon probable cause, his identification becomes a matter of legitimate state interest, and he cannot claim privacy in it. *See Kincade*, 379 F.3d at 837; *Rise v. State of Oregon*, 59 F.3d 1556, 1560, 1559 (9th Cir. 1995) ("The information derived from [a DNA] blood sample is substantially the same as that derived from fingerprinting-an identifying marker unique to the individual from whom the information is derived," but noting that, "We have stated, however, that 'in the fingerprinting context, there exists a constitutionally significant distinction between the gathering of fingerprints from free persons to determine their guilt of an unsolved criminal offense and the gathering of fingerprints for identification purposes from persons within the lawful custody of the state.'"), *cert. denied*, 517 S.Ct. 1160 (1996). "The 'body' or identity of a defendant ... is never itself suppressible as a fruit of an unlawful arrest." *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); see also *United States v. Foppe*, 993 F.2d 1444, 1449 (9th Cir.) (suppression of incidental observations by police, such as appearance, would not have deterrent effect on unlawful police activity), *cert. denied*, 510 U.S. 1017, 114 S.Ct.

615, 126 L.Ed.2d 579 (1993); *see e.g.*, *U.S. v. Slater*, 411 F.3d 1003 (8th Cir. 2005) (A police officer's request for a passenger's identification following the stop of the motor vehicle at a sobriety checkpoint does not violate the Fourth Amendment, even if the officer had no reason to suspect the passenger's involvement in criminal activity, since a request for identification does not constitute a "seizure.")

Robinette is lawfully within the custody of the Government, and proper identification of a defendant pending charges is a compelling state interest. The Court finds that the swab is constitutional as a minimal intrusion, which promotes a legitimate governmental interest.

Robinette argues that it is the purpose for which the swab will be used which violates his Fourth Amendment rights. The swab is used in CODIS. Robinette argues that while there may be probable cause for the crimes for which he is charged, there is no probable cause for the crimes for which the DNA will be used to match potentially unsolved, cold case hits in CODIS.

The court disagrees. This court finds that once the search is completed in a constitutional manner, the subsequent use of the evidence does not create an independent search. There is no additional invasion of the owner's privacy interest for evidence constitutionally obtained. See e.g., *A.A. ex rel. B.A. v. Attorney General of New Jersey*, 189 N.J. 128, 140, 914 A.2d 260, 267 (N.J. 2007) ("[I]t would be unreasonable to say that an object or substance could be lawfully searched and seized, but that it could not be used to solve a crime committed prior to the search and seizure. We conclude that DNA test results lawfully obtained pursuant to the Act may be used to solve crimes committed prior to the taking of the DNA test.") If defendant's argument were the Fourth Amendment test, than any subsequent use of constitutionally obtained evidence would thereafter be subject to an independent constitutional scrutiny. All law enforcement investigative efforts would come to stand-still. Subsequent use of any fingerprints, photographs, documents, or other evidence constitutionally obtained would be foreclosed. This court declines to so hold in the absence of controlling authority. *Compare Wong Sun v. United States*, 371 U.S. 471, 484–491 (1963) (Fourth Amendment requires exclusion not only of physical, tangible materials obtained during or as a "direct" result of an unreasonable search but also evidence that as a consequence of the search the defendant made incriminating oral admissions).

Indeed, Robinette cannot have an absolute expectation of privacy in DNA. As conceded at oral argument, human beings shed DNA nearly every moment of the day. His right to privacy in his DNA must be balanced against the Government's compelling needs. The crimes for which the defendant has been charged are serious, and they are classified as crimes of violence. They also are alleged to have taken place for an extensive period of time and in numerous locations in California, Costa Rica, and in the Netherlands, among other places. The Government has established probable cause to the grand jury that defendant has long-standing and demonstrated sexual interest in minors. In light of these crimes, it is certainly possible that additional victims may be located. Identifying additional victims is a legitimate and compelling governmental interest.

Obtaining and analyzing DNA is a search or seizure which implicates Fourth Amendment concerns. But such procedure is reasonable in these certain circumstances, given the minimal intrusion which it entails and the legitimate government interest in the identification of the individual and the investigation and prosecution of unsolved and future criminal acts by the use of DNA. The manner in which the DNA is used is not significantly different from the use of fingerprints. The court also considers the nature of the crimes charged against Robinette for which probable cause has issued. The court finds that while obtaining and analyzing the DNA or saliva of Robinette based on probable cause for committing sex offense is a search and seizure implicating Fourth Amendment concerns, it is a reasonable search and seizure.

5. **Middle Ground**

At oral argument, defendant proposed a "middle ground." Defendant proposed that the swab be taken,s but any use or entry into CODIS stayed until the Supreme Court decides the issue.

The court declines to take this middle ground. At oral argument, neither counsel could identify what prolonged delay in the use of the DNA sample would have on the quality of the sample. The court is concerned about degradation of the sample. Accordingly, the request for a middle ground is denied.

/////

/////

/////

15

**CONCLUSION AND ORDER**

For the foregoing reasons, the Court ORDERS:

1.    Defendant Christopher David Robinette is ORDERED to submit to a buccal swab pursuant to 42 U.S.C. §14135a.

2.    The Court STAYS this order for fifteen (15) court days from the date of service of this order to permit defendant to apply for and obtain a writ or a stay from the Ninth Circuit Court of Appeals.

3.     Upon the expiration of the fifteen days from the service of this order, without a stay by the Ninth Circuit, this court's order will go into effect and defendant will be required to submit to a buccal swab pursuant to 42 U.S.C. §14135a.

4.    The clerk of the court is directed to serve a copy of this order on:

> United States Marshal Service
> 2500 Tulare Street
> Suite 3501
> Fresno, CA 93721

IT IS SO ORDERED.

**Dated:    January 18, 2013**                    /s/ **Barbara A. McAuliffe**
                                                      UNITED STATES MAGISTRATE JUDGE